UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

QUINCY MOORE,

    Petitioner,

    v.                                                 Case No. 23-CV-569-SCD

ROBERT MILLER,[1]
   *Warden, Racine Correctional Institution,*

    Respondent.

## DECISION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

    Near the end of Quincy Moore's state-court trial for selling drugs and illegally possessing firearms, one of the jurors reported that he heard another juror say "we're in a hanging mood" while the jurors were in the jury room. The trial court discussed the issue with the parties, questioned the alleged culprit (who denied making the comment or hearing anyone else make it), and ultimately gave a curative instruction to the entire jury. The jury convicted Moore of all but one of the charges. Moore appealed, arguing that the trial court abused its discretion in failing to identify and exclude the biased juror and that his trial lawyer was prejudicially ineffective for failing to investigate the identity of the biased juror and ensure his or her removal from the jury panel. The Wisconsin state courts denied relief.

    Moore then filed a petition for a writ of habeas corpus pursuant to § 2254 of the United States code. He alleges the same two claims he pursued in state court. Because the state court's

---

[1] Robert Miller has replaced Jason Wells as warden of Racine Correctional Institution. *See* Fed. R. Civ. P. 25(d); *see also* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

decision denying those claims was not objectively unreasonable, Moore is not entitled to relief under § 2254. Thus, I will deny his petition and dismiss this action.

## BACKGROUND

In December 2018, Quincy Moore and Marcus Washington were tried in Milwaukee County Circuit Court for multiple drug and gun charges. *See* Respt's Answer Ex. 3, at 2, ECF No. 7-3; *see also* Respt's Answer Ex. 5, ECF No. 7-5; Respt's Answer Ex. 6, ECF No. 7-6; Respt's Answer Ex. 7, ECF No. 7-7; Respt's Answer Ex. 8, ECF No. 7-8; Respt's Answer Ex. 9, ECF No. 7-9; Respt's Answer Ex. 10, ECF No. 7-10. A few days into the trial, Juror 25 reported that another juror said "we're in a hanging mood" while the jurors were in the jury room. Ex. 9, at 9. Juror 25 indicated that it seemed to be an attempt at humor and that no other jurors responded to the comment. *Id.* at 9–10. Juror 25 also indicated that he couldn't confirm the juror number of who made the comment, but he thought it was Juror 27.

The trial judge asked the lawyers how she should handle the issue. *See* Ex. 9, at 10. She said she could question Juror 25, but she was concerned that the other jurors would know he was the one who sent the note. So, the court's initial idea was to tell the entire jury not to make any comments about the case. The prosecutor said the comment was somewhat ambiguous and suggested the court instruct the entire jury not to prejudge the case. *Id.* at 10–11. Washington's lawyer indicated that the comment had only negative implications for the defense and suggested polling the jurors individually to see if they heard the comment and, if so, whether it affected them. *Id.* at 11. Moore's lawyer said the comment was clearly inappropriate and racially charged and suggested removing the juror who made it. *Id.* at 11–12. Because Juror 25 couldn't identify the juror number of the person who made the comment—the jurors weren't wearing their juror number stickers at the time—the trial judge

2

indicated that she planned to admonish the entire jury not to prejudge the case. *Id.* at 12. Moore's lawyer asked if all the jurors could be brought in the courtroom to disclose their juror numbers. Instead, the trial judge decided to question only Juror 27. Juror 27 denied making the comment or hearing anyone else make it. *Id.* at 12–14. All three attorneys declined to ask Juror 27 any questions.

After sending Juror 27 back to the jury room, the trial judge indicated that she planned to admonish the entire jury. *See* Ex. 9, at 14–15. Once back in the courtroom, the trial judge informed the jury she had received a note about an inappropriate comment that might suggest that one of the jurors was not being fair and impartial. The trial judge told the jurors to not say anything in the jury room that indicated they potentially prejudged the case, to listen to all the evidence and keep an open mind, and to not talk about the case until they started deliberating. *Id.* at 15–16.

Ultimately, the jury found Moore guilty of five of the six charges he faced. *See* Ex. 10. The trial judge sentenced him to thirteen years in prison and thirteen years of extended supervision. *See* Rept's Answer Ex. 11, ECF No. 7-11; Respt's Answer Ex. 1, ECF No. 7-1.

Moore appealed. He first moved for post-conviction relief, asserting juror bias and ineffective assistance of counsel. *See* Ex. 3, at 5. The trial court denied the motion without a hearing. Moore then filed a direct appeal, arguing that the trial court abused its discretion in failing to identify and exclude the biased juror and that his trial lawyer was prejudicially ineffective for failing to investigate the identity of the biased juror and ensure his or her removal from the jury panel. *See* Respt's Answer Ex. 2, ECF No. 7-2. The Wisconsin Court of Appeals affirmed Moore's judgment of conviction and the order denying his post-conviction motion. *See* Ex. 3; *see also State v. Moore*, No. 2020AP1357-CR, 2021 WL 5459202,

2021 Wisc. App. LEXIS 1067 (Wis. Ct. App. Nov. 23, 2021). The court determined that there was no evidence the "hanging mood" comment affected the jury's findings and that the trial court's curative instruction erased any possible prejudice. Ex. 3, at 5–6. The court also determined that trial counsel did object to the trial court's handling of the comment and that counsel was not deficient for failing to continue to object. *Id.* at 6–8. The Wisconsin Supreme Court subsequently denied Moore's petition for review. *See* Respt's Answer Ex. 4, ECF No. 7-4.

On May 4, 2023, Moore filed a federal habeas petition alleging violations of his right to an impartial jury and his right to the effective assistance of counsel. *See* Pet., ECF No. 1. The matter was reassigned to this court after the parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 8, 9. After the State filed its answer, *see* ECF No. 7, Moore filed a brief in support of his petition, *see* ECF No. 12, and the State filed a brief opposing the petition, *see* ECF No. 13. Moore did not file a reply brief, and the time to do so has long passed. *See* ECF No. 11 (giving Moore until January 17, 2024, to file his reply brief).

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Moore's habeas petition. Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was

4

based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 572 U.S. 415, 419 (2014).

"A legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.). Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and

5

comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411 (opinion of O'Connor, J.)). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). To obtain relief under 28 U.S.C. § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1) (establishing that state factual determinations are "presumed to be correct"). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

## DISCUSSION

Moore claims that the trial court abused its discretion in failing to identify and exclude the biased juror and that his trial lawyer was prejudicially ineffective for failing to investigate the identity of the biased juror.

## I.    Moore Is Not Entitled to Habeas Relief on His Biased Jury Claim

Moore first argues that his right to an impartial jury was violated when the trial court failed to identify and remove the juror who said "we're in a hanging mood." Moore, who is black, insists that the comment raised a presumption of racial bias that was not disproven. He criticizes the trial court for not questioning the juror who overheard the comment (Juror 25) and for instead focusing on Juror 27, who he says unsurprisingly did not own up to the comment in open court.

The issue on federal habeas review is not whether the state trial court's investigation of the alleged "hanging mood" comment was deficient or whether this court would have handled that situation differently. Rather, the focus is on whether the Wisconsin Court of Appeals' decision on the issue was contrary to clearly established Supreme Court precedent, involved an unreasonable application of Supreme Court precedent, or was based on an unreasonable determination of the facts. Moore has failed to show that he is entitled to habeas relief under any of those three avenues.

First, the state appellate court's decision was not contrary to clearly established Supreme Court precedent. The court correctly noted that a criminal defendant has a constitutional right to an unbiased jury. *See* Ex. 3, at 5 (citing *State v. Brunette*, 583 N.W.2d 174, 178 (Wis. Ct. App. 1998)). Although the court cited only state law in support of that rule, its recitation was consistent with Supreme Court precedent. *See, e.g.*, *United States v. Tsarnaev*, 595 U.S. 302, 312 (2022) ("The Sixth Amendment guarantees 'the accused' the right to a trial 'by an impartial jury.'"). The court also correctly noted that jurors presumably follow the trial court's instructions. *See* Ex. 3, at 6 (citing *State v. Leach*, 370 N.W.2d 240, 253–54 (Wis. 1985); *State v. Bembenek*, 331 N.W.2d 616, 625 (Wis. Ct. App. 1983)). That presumption is consistent

7

with Supreme Court precedent. *See, e.g.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

Moore cites to four federal cases that he thinks entitle him to relief on his biased jury claim; however, each case is materially distinguishable from our case. In the first case, *Pena-Rodriguez v. Colorado*, the Supreme Court held that

> where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule[2] give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

580 U.S. 206, 225 (2017). Here, the alleged biased comment was made *before* deliberations began, so the no-impeachment rule was not implicated. Indeed, the trial court did question one juror here, and the no-impeachment rule did not prevent it from questioning the others. The second case, *Jentges v. Milwaukee County Circuit Court*, 733 F.2d 1238 (7th Cir. 1984), does not constitute "clearly established Federal law" because it was decided by the Seventh Circuit, not the Supreme Court. *See Thaler*, 559 U.S. at 47. Moreover, that case involved allegedly improper statements by a prosecutor, not a juror, and the Seventh Circuit ultimately held that the trial court's instructions negated any damage that may have occurred as a result of the prosecutor's statements. *See Jentges*, 733 F.2d at 1242. The last two cases involved issues during jury selection. In *Reynolds v. United States*, the Supreme Court held that the trial court did not abuse its discretion when it overruled a defendant's challenge to a juror who said he believed he had formed an opinion about the case prior to the commencement of trial. 98 U.S. 145, 154–56 (1879). And in *Aldridge v. United States*, the Supreme Court held that a trial court erred

---

[2] The no-impeachment rule generally prohibits jurors from testifying about their deliberations in an attempt to challenge the validity of their verdict. *See Pena-Rodriguez*, 580 U.S. at 211.

when it refused to permit a black defendant's attorney to ask potential jury members—all of whom were white—whether they harbored any racial bias. 283 U.S. 308, 310–15 (1931). In contrast, the trial court in our case did not limit Moore's lawyer from questioning potential jury members. It permitted Moore's lawyer to question the juror who was accused of making the biased comment; however, the lawyer declined to ask that juror any questions. The Wisconsin Court of Appeals' decision therefore is not contrary to any of the cases Moore cites.

Second, the state appellate court did not unreasonably apply clearly established Supreme Court precedent, as the court reasonably held that Moore's right to an impartial jury was not violated. The court reasonably determined that there was no evidence the "hanging mood" comment affected the jury's findings. Unlike in *Pena-Rodriguez*, no juror here made a clear statement that indicated he or she relied on racial stereotypes or animus to convict the defendant. The only juror who was questioned (Juror 27) denied making the comment or hearing anyone else make it, and the tattling juror (Juror 25) said the comment appeared to be a joke and that no other jurors responded to it. The off-color comment, if it was in fact made, did not show that the juror who said it harbored racial bias against blacks and was going to convict Moore no matter the evidence. *Cf. Reynolds*, 98 U.S. at 154–57. Moreover, unlike the defense attorney in *Aldridge*, Moore's lawyer was able to probe for potential bias before the jury began its deliberations. His lawyer argued that the juror who made the comment should be removed from the case, and she had the chance to question Juror 27 but chose not to.

The court also reasonably determined that the trial court's curative instruction erased any possible prejudice stemming from the alleged "hanging mood" comment. After

9

questioning Juror 27, the trial court told the entire jury to be careful of what they say in the jury room, to listen to all the evidence and keep an open mind, and to not talk about the case until they started deliberating. The trial then continued with additional testimony, and the jury ultimately convicted Moore of several of the charges. However, as the court of appeals aptly noted, Moore provided only speculation—but no evidence—that the jury disregarded the trial court's instructions. Contrary to Moore's suggestion, it was his burden to prove that the presumption had been overcome, not the State's burden to prove that the jurors followed the court's instructions or that the verdict was not influenced by racial bias. The fact that the jury acquitted Moore of one of the charges further shows that it carefully considered the evidence and listened to the court's instructions.

Finally, the state appellate court did not base its decision on an unreasonable determination of the facts. The court accurately recounted the juror note that first disclosed the "hanging mood" comment, the trial court's discussion of the issue with the parties, and the trial court's curative instruction. The court also accurately noted that Moore did not cite to any record evidence that showed the comment affected the jury's findings or that the jury ignored the trial court's instructions. Moore's real beef appears to be with the facts the trial court did not pursue, namely, taking additional steps to identify the juror who made the "hanging mood" comment. While I agree that the trial court had other, potentially better options—including questioning the juror who reported the comment or polling all the jurors—I cannot say that its chosen path was unreasonable. More to the point, the Wisconsin Court of Appeals did not rest its decision on fact finding that ignores the clear and convincing weight of the evidence; its decision denying Moore's biased jury claim was adequately supported by the record.

Finally, without any other corroborating evidence, it is a stretch to believe that a stray comment about being in a "hanging mood" necessarily had some sort of racial connotation. In *State v. Loftin,* for example, the court found it problematic when "a white juror had told two of his African–American co-workers that he was going to buy a rope to hang defendant." 922 A.2d 1210, 1214 (2007). Because the juror's comments were made in a case involving an interracial killing, the court found error. *Id.* By stark contrast, the comment here (if made at all) was vague and unrelated to the defendant's race. After all, juries have been involved in death penalty cases, many with hanging as the final result, against defendants of all races for centuries. Absent anything more specific, the state courts need not assume racial bias. *See e.g., United States v. Colvard,* 27 F.3d 564 (4th Cir. 1994) ("We find that Colvard failed to show that the juror who stated, 'Let's hang him,' was dishonest during voir dire . . . or that this statement affected his verdict."); *United States v. Kimberlin,* 527 F. Supp. 1010, 1011 (S.D. Ind. 1981), aff'd, 805 F.2d 210 (7th Cir. 1986) (as to "the alleged comment by a juror to the effect that 'They ought to hang him now, so that we can go home,' defendant does not explain how such a comment denied him the right to trial by a fair and impartial jury.")

In sum, Moore is not entitled to habeas relief on his biased jury claim.[3]

## II. Moore Is Not Entitled to Habeas Relief on His Ineffective Assistance of Trial Counsel Claim

Moore also argues that his right to effective assistance of counsel was violated when his trial lawyer failed to investigate the identity of the juror who made the "hanging mood" comment and ensure his or her removal from the jury panel.

---

[3] The State also argues that any error in the trial court's handling of the "hanging mood" comment was harmless. However, the State does not cite any cases applying harmless error review to jury bias that occurs after jury selection but prior to deliberations. Because the state courts here did not unreasonably err, I do not need to decide whether that alleged error could have also been harmless. Nevertheless, it does appear that the evidence presented at trial strongly supported Moore's guilt.

The State contends that Moore's ineffective assistance of counsel claim fails for several reasons. It first argues that Moore abandoned or conceded this claim by not addressing it in his habeas brief. Moore alleged in his habeas petition that his trial lawyer was prejudicially ineffective with respect to the juror issue. *See* Pet. 7–8. He also identified that issue in his brief in support of his petition. *See* Petr's Br. 2. However, the substance of his brief focuses entirely on the underlying biased jury claim and the trial court's alleged failures; he does not mention any alleged mistakes by his lawyer or cite any caselaw in support of an ineffective assistance claim. *See id.* at 4–8. Moore also did not file a reply brief responding to the State's argument that he abandoned that claim. Because Moore did not substantively discuss the ineffective assistance of trial counsel claim in his brief, he arguably forfeited review of that claim. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

The State also argues that, even if Moore did not abandon or concede his ineffective assistance claim, that claim is defaulted because the Wisconsin Court of Appeals rejected it on state procedural grounds. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Whyte v. Winkleski*, 34 F.4th 617, 623 (7th Cir. 2022) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)). A state procedural rule "is adequate if it is 'firmly established and regularly followed as of the time when the procedural default occurred.'" *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021) (quoting *Richardson v. Lemke*, 745 F.3d 258, 271 (7th Cir. 2014)). "It is independent of federal law if it does not

12

depend on the merits of the petitioner's claim." *Id.* (citing *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam)).

The State insists that the Wisconsin Court of Appeals rejected Moore's ineffective assistance of counsel claim based on the procedural rule established in *State v. Allen*, 2004 WI 106, 682 N.W.2d 433. In *Allen*, the Wisconsin Supreme Court held that circuit courts may deny a hearing on a post-conviction motion "[i]f the motion does not raise facts sufficient to entitle the defendant to relief, . . . if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *State v. Ruffin*, 2022 WI 34, ¶ 28, 974 N.W.2d 432, 438 (citing *Allen*, 682 N.W.2d at 437). "When a circuit court summarily denies a postconviction motion alleging ineffective assistance of counsel without holding a[n evidentiary] hearing, the issue for the court of appeals reviewing an ineffective assistance claim is whether the defendant's motion alleged sufficient facts entitling him to a hearing." *State v. Sholar*, 2018 WI 53, ¶ 51, 912 N.W.2d 89, 105 (citing *State v. Love*, 2005 WI 116, ¶ 2, 700 N.W.2d 62, 64).

The problem for the State here is that, while the court of appeals could have denied Moore's claim under *Allen*, it didn't. The court did not cite *Allen* or discuss the pleading requirements for post-conviction motions. Rather, the court unequivocally denied the ineffective assistance claim on its merits. *See* Ex. 3, at 6–8. Relying on *Woods v. Schwartz*, 589 F.3d 368 (7th Cir. 2009), the State asserts that the failure to cite *Allen* does not matter. In *Woods*, the Seventh Circuit held that, where it's unclear from the face of a state-court decision whether the court disposed of a claim on procedural grounds, courts on federal habeas review "must make a determination on the record that the state court was presented with." 589 F.3d at 375. In our case, however, the state court's ruling is crystal clear—the court rejected Moore's

13

ineffective assistance claim on federal substantive grounds, not state procedural grounds. The State says that the court of appeals' discussion of the substance of Moore's ineffective assistance claim does not necessarily mean it didn't reject his claim under *Allen*. That may be true in certain circumstances. *See, e.g.*, *Whyte*, 34 F.4th at 627–28 (distinguishing the analysis of the "substance" of ineffective assistance claims in an *Allen* posture from the analysis of the "merits" of such claims). But the state appellate court in our case did not discuss *any* procedural grounds when disposing of Moore's ineffective assistance of counsel claim. Thus, Moore did not procedurally default that claim.

Finally, the State argues that Moore's ineffective assistance of counsel claim fails on its merits. Criminal defendants have a constitutional right "to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To succeed on an ineffective assistance of counsel claim, a habeas petitioner "must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (citing *Strickland*, 466 U.S. at 688, 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[C]ourts need not address both prongs of *Strickland*" if the petitioner makes an inadequate showing as to one. *Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 697).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that

14

determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, when a *Strickland* claim is evaluated under § 2254(d)(1), the standard of review is said to be "doubly deferential." *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam)).

On top of this double deference, federal habeas courts must bear in mind that, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123; *see also Richter*, 562 U.S. at 101 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). As the Supreme Court emphasized in *Richter*, "[i]f this standard is difficult to meet, that is because it was meant to be." 562 U.S. at 102. Although § 2254 "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," a federal court's authority to issue a writ of habeas corpus under that section is reserved for cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.*

Moore is not entitled to federal habeas relief on the merits of his ineffective assistance of trial counsel claim. The Wisconsin Court of Appeals accurately recited the *Strickland* standard. *See* Ex. 3, at 7 (citing and quoting *Strickland*). The court also reasonably applied that standard to the facts of the case and adequately supported its factual findings with record support. The court agreed that, contrary to Moore's suggestion, his trial lawyer "vigorously argued that the juror who made the remark should be discharged." *Id.* at 6–7. The court quoted the trial proceedings, during which Moore's lawyer said the comment was "clearly inappropriate" and "racially-charged," insisted that whoever made the comment "was not

15

qualified to serve on the jury," and suggested that person "be thrown off" the jury. *Id.* at 7; *see also* Ex. 9, at 11. After the trial court indicated that it planned to admonish the entire jury, Moore's lawyer suggested bringing all the jurors in to identify their juror numbers. Ex. 9, at 12. Instead, the trial court decided to question only one juror (the one the tattling juror thought it may have been—recall, the jurors weren't wearing their numbers at the time the comment was made) and to give a curative instruction to the entire jury. The court of appeals reasonably determined that counsel was not deficient for failing to continue to object at that point. Ex. 3, at 7 (citing *State v. Cameron*, 2016 WI App. 54, ¶ 27, 885 N.W.2d 611, 618 ("It is not deficient performance for counsel not to make a pointless objection.")); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel."). Finding no deficient performance, the court accurately found that it didn't need to analyze the prejudice prong.

Moreover, it is not reasonably probable that the outcome would have been different had Moore's lawyer continued to object. The trial court clearly made up its mind that a curative instruction was sufficient to address the lawyer's concerns, and counsel had already preserved the issue for appeal. Also, there is no evidence that the juror who made the "hanging mood" comment (if it was made at all) disregarded the court's instructions. And the evidence presented at trial—including drugs and guns found in the bedroom from which the police had seen Moore attempt to flee, Moore's fingerprints on a coffee grinder that was found with other drug paraphernalia (e.g., scales, measuring cups, plastic baggies), video evidence of Moore handling drugs and guns, and Moore driving a vehicle from which an informant recently

16

purchased drugs—strongly supported Moore's guilt. *See* Ex. 6, at 5–21, 128–29, 145–76; Ex. 7, at 10–25, 38–43.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, no reasonable jurist would find it debatable whether Moore's constitutional rights were violated concerning the "hanging mood" comment. I will therefore deny a certificate of appealability.

## CONCLUSION

For the reasons given above, the court **DENIES** the petition, ECF No. 1, and **DISMISSES** this action. The court also **DENIES** a certificate of appealability. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 27th day of June, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

17

Case 2:23-cv-00569-SCD   Filed 06/27/24   Page 17 of 17   Document 14